UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| COMEDICA INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-00026-TWP-TAB |
| | ) | |
| HILL-ROM SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION TO DISMISS**

This matter is before the Court on Defendant Hill-Rom Services, Inc. ("Hill-Rom"), Motion to Dismiss Complaint (Filing No. 24). Plaintiff Comedica Incorporated ("Comedica") initiated this action for breach of contract and declaratory judgment, alleging that Hill-Rom failed to pay certain royalties pursuant to the parties' contracts. In its Motion to Dismiss, Hill-Rom argues that under the plain language of the contracts, Hill-Rom was not and is not required to pay the royalties at issue. For the following reasons, the Court **grants** Hill-Rom's Motion to Dismiss.

### I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Comedica as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

In 2005, the owners of Comedica developed the MetaNeb® System ("MetaNeb"), which is designed to mobilize retained secretions, provide lung expansion therapy, and deliver medicated aerosol for the treatment and prevention of pulmonary atelectasis (Filing No. 1 at ¶¶ 10, 11). In 2009, Hill-Rom approached Comedica regarding the acquisition of all of Comedica's rights, titles,

and interest in and to MetaNeb, with the intent of developing MetaNeb for hospital use ("Acute Care") and later developing and releasing MetaNeb for home use ("Post-Acute Care"). *Id.* at ¶ 19.

On November 6, 2009, Comedica and Hill-Rom entered into a Business Development Agreement, which granted Hill-Rom the exclusive right to make and sell MetaNeb. *Id.* at ¶ 23. On February 1, 2014, the parties entered into the Post-Acute Care Exclusive License Agreement (the "Post-Acute Care Agreement"), which granted Hill-Rom the exclusive right to make, use, and sell Comedica products in the Post-Acute Care field. *Id.* at ¶ 24.

Under the Post-Acute Care Agreement, Hill-Rom must pay Comedica royalties "in an amount equal to the product of the Post Acute Care Royalty Rate multiplied by the Post Acute Care Net Sales" (Filing No. 1-3 at p.5, ¶ 3(c); *id.* at p.14, § (o)). In turn, "Post Acute Care Net Sales" is defined as "the gross invoiced selling, leading, or other transfer price of Products in the Post Acute Care Field by Hill-Rom," less certain deductions. *Id.* at p.14, § (o). In short, Hill-Rom must pay royalties to Comedica based on its sales of "Products."

"Products" are defined as:

> the Existing Product, the Post Acute Product, and any other Systems covered by Comedica Intellectual Property that are in full force and effect . . . ; provided, however, that no Systems, including any Existing Product [or] Post Acute Product . . . shall be deemed to be a Product unless it is covered by one or more valid claims of Comedica Intellectual Property that are in full force and effect.

*Id.* at p.15, § (s). The "Existing Product" is defined as MetaNeb (Filing No. 1 at ¶ 28), and the "Post Acute Product" is MetaNeb "plus additional refinements and enhancements identified by Hill-Rom, if any, for use of the Post Acute Product in the Post Acute Field" (Filing No. 1-3 at p.15, § (r)).

In February 2021, Hill-Rom began selling its own at-home lung expansion therapy device called Volara™ ("Volara") (Filing No. 1 at ¶ 34). According to the Complaint, Volara and MetaNeb are identical in several respects. *Id.* On September 20, 2021, Comedica requested an

2

audit of Post-Acute Care Net Sales to identify the revenue generated from the sales of MetaNeb and Volara. *Id.* at ¶ 43. The parties subsequently held a Zoom meeting, during which Hill-Rom informed Comedica that it did not intend to pay any royalties on revenue generated through sales of Volara. *Id.* at ¶ 44.

On February 24, 2023, Comedica filed its Complaint, alleging Hill-Rom breached the Post-Acute Care Agreement by failing to pay Comedica royalties on its sales of Volara, and requesting a declaratory judgment stating that Hill-Rom must make royalty payments to Comedica on all future sales of Volara ([Filing No. 1](#)). On May 5, 2023, Hill-Rom filed its Motion to Dismiss, arguing that under the terms of the parties' contracts, it is not required to pay royalties to Comedica on sales of Volara ([Filing No. 24](#)). Comedica filed its response brief on June 2, 2023, and Hill-Rom filed its reply on June 9, 2023. On August 16, 2023, the Court heard oral argument on Hill-Rom's Motion. On October 16, 2023, Hill-Rom filed a Supplemental New Seventh Circuit Authority in Support of Motion to Dismiss ([Filing No. 38](#)).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not

required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

The primary dispute raised in Hill-Rom's Motion to Dismiss is simple: has Comedica adequately alleged that Volara is a Product under the Post-Acute Care Agreement? If Volara is a Product, then Hill-Rom must pay royalties on its sales. If it is not, then Hill-Rom has no royalty obligations. This question is one of contract interpretation, and is thus a question of law for the Court to decide. Under Indiana law,[1] the goal of contract interpretation is to ascertain and give effect to the parties' intent "as reasonably manifested by the language of the agreement." *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). "Indiana follows 'the four corners rule' that extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006). "Clear and

---

[1] The Post-Acute Care Agreement contains a choice of law provision stating "This Agreement will be governed by the laws of the State of Indiana without regard to its conflicts of law principles and by the federal laws of the United States of America as appropriate" (Filing No. 1-3 at 9, ¶ 14).

4

unambiguous terms in the contract are deemed conclusive, and when they are present [the Court] will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions." *Ryan v. Ryan*, 972 N.E.2d 359, 364 (Ind. 2012). A contract is ambiguous if a reasonable person would find it subject to more than one interpretation. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012).

In arguing that Volara is not a Product, Hill-Rom focuses on the Product definition's references to "Comedica Intellectual Property." Hill-Rom argues that any Post Acute Product, including Volara, must be "covered by Comedica Intellectual Property" to be considered a Product, and because the Complaint does not allege that Volara is covered by Comedica Intellectual Property, the Complaint does not adequately plead a claim for breach of contract or declaratory judgment (Filing No. 25 at 2).

Comedica asserts several arguments in response, but none is persuasive. First, Comedica argues that the definition of Products can reasonably be read to include any refinements or enhancements of MetaNeb, even if those refinements or enhancements are not themselves covered by Comedica Intellectual Property (Filing No. 30 at 7). This proposed reading runs contrary to the plain language of the Post-Acute Care Agreement. As Hill-Rom asserts, the Post-Acute Care Agreement expressly limits Products to Existing Products, Post Acute Products, and Systems "covered by Comedica Intellectual Property" (Filing No. 1-3 at p.15, § (s)). If the Court were to hold that Post Acute Products may be products despite not being covered by Comedica Intellectual Property, it would render the phrase "covered by Comedica Intellectual Property" ineffective. *See Pohl v. Pohl*, 15 N.E.3d 1006, 1014 (Ind. 2014) (citing *Whitaker v. Brunner*, 814 N.E.2d 288, 294 (Ind. Ct. App. 2004), *trans. denied* ("We read the contract as a whole and will attempt to construe the contractual language so as not to render any words, phrases, or terms ineffective or meaningless.")).

5

Resolving any doubt as to the parties' intent, the second phrase of the Products definition clarifies that "*no System, including any* Existing Product, *Post Acute Product*, or any disposable or component or subassembly relating thereto, *shall be deemed to be a Product unless it is covered by one or more valid claims of Comedica Intellectual Property* that are in full force and effect." *Id.* (emphasis added). If the Court adopted Comedica's proposed interpretation of Products, this phrase would also be rendered ineffective. *See Pohl*, 15 N.E.3d at 1014. Comedica's proposed reading of the Products definition is therefore unreasonable. The Court finds that the Post-Acute Care Agreement unambiguously provides that any refinements or enhancements to MetaNeb must be "covered by Comedica Intellectual Property" to be Products.

Second, Comedica argues that it has adequately alleged the possibility of ambiguity in the Post-Acute Care Agreement, and the Court should therefore deny dismissal at this stage. *See Skinner v. Metro. Life Insurance Co.*, 829 F. Supp. 2d 669 (N.D. Ind. 2010) (declining to dismiss claim for breach of insurance contract because plaintiff's allegations raised inference of ambiguity). The only potential ambiguity identified by Comedica in its response brief is ambiguity in the phrase "enhancement or refinement" in the definition of Post Acute Product (Filing No. 30 at 6–7). Even assuming that Volara is an "enhancement or refinement" of MetaNeb, though, Volara must still be "covered by Comedica Intellectual Property" to be a Product. At oral argument, Comedica also argued that the phrase "covered by Comedica Intellectual Property" is vague and ambiguous. Comedica did not specifically explain how this phrase itself is ambiguous. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Comedica instead argued that the definitions of "Products" and "Post Acute Product" could reasonably be read, in conjunction, as meaning that refinements or enhancements to MetaNeb need not be covered by Comedica Intellectual Property to be Products, so the

6

definition of Products is ambiguous. For the reasons explained above, Comedica's proposed reading of the Products definition is not reasonable, so there is no ambiguity precluding dismissal.

And lastly, Comedica argues that Hill-Rom's reading of the Products definition is not reasonable because it "suggests that Comedica would need to prove patent, copyright and/or trademark infringement to succeed on its claims, yet the 'Post-Acute Care Agreement' does not reference a requirement that a 'Post Acute Product' infringe on Comedica's Intellectual Property" ([Filing No. 7 at 30](Filing No. 7 at 30)). At oral argument, Comedica similarly contended that this Court would need to find that Volara infringes Comedica's IP to find that Comedica's breach of contract claim should be dismissed. The Court disagrees. The Court need not decide whether Volara infringes on Comedica's Intellectual Property or whether Comedica could assert an infringement claim against Hill-Rom. The Court need only decide whether Comedica has adequately alleged that Hill-Rom's failure to pay royalties on its sales of Volara breaches the Post-Acute Care Agreement. The Court decides Comedica has not done so.

Pursuant to the unambiguous terms and definitions in the Post-Acute Care Agreement, Volara must be "covered by Comedica Intellectual Property that are in full force and effect" to be a Product and entitle Comedica to royalties on its sales. Because Comedica has not alleged facts sufficient to create a reasonable inference that Volara is a Product, Comedica has failed to adequately plead its breach of contract claim. For the same reasons, Comedica has failed to adequately plead its declaratory judgment claim, and both claims must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Hill-Rom's Motion to Dismiss (Filing No. 24) is **GRANTED**. All claims against Hill-Rom are **dismissed without prejudice**.[2] Comedica is granted leave to file an amended complaint within **fourteen (14) days of the date of this Entry**. If an amended complaint is an exercise in futility and/or if nothing is filed, the Motion to Dismiss will be converted to a dismissal with prejudice and final judgment will issue.

As per the Order at Filing No. 43, the case management deadlines may remain suspended until final adjudication of this motion to dismiss.

**SO ORDERED**.

Date:    11/2/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Gregory L. Laker
COHEN & MALAD LLP
glaker@cohenandmalad.com

John R. Maley
BARNES & THORNBURG, LLP (Indianapolis)
jmaley@btlaw.com

Michael Wesley McBride
COHEN & MALAD LLP
mmcbride@cohenandmalad.com

---

[2] "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).

Dylan Pittman
BARNES & THORNBURG, LLP (Indianapolis)
dylan.pittman@btlaw.com

Brett Barrett Thomas
Cohen & Malad, LLP
bthomas@cohenandmalad.com